(No. 3614—

CHARLES VESELSKY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1942.*

MILES WLODECK, (M. F. UNGER, of Counsel), for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

182

ECKERT, J.

On September 26, 1940, the claimant, Charles Veselsky, was employed by the State of Illinois as a watchman in highway maintenance work in the Division of Highways of the Department of Public Works and Buildings, and was stationed on Route 213 at Summit, Illinois. While flagging traffic across a bridge, on which the southbound travel lane was closed for repairs, and northbound traffic only was maintained, an automobile driven by John Serna, of McCook, Illinois, approached the bridge. The claimant signalled for Serna to stop; the Serna automobile skidded, struck, and injured Veselsky.

Claimant was first taken to the Berwyn Community Hospital, and on October 4, 1940, was transferred to St. Luke's Hospital in Chicago, where he was placed under the care of Dr. H. B. Thomas, Professor of Orthopedics, University of Illinois Medical College. On November 1, 1940, he returned to his home, but continued under the care of Dr. Thomas until April 22, 1941, when he was discharged.

At the time of the injury, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the period provided by the Act. The accident arose out of and in the course of the employment.

Claimant had worked for the respondent for a period of ten days prior to the accident, at the rate of fifty cents per hour; had worked eight hours a day; and received total wages in the amount of $44.00. Employees of the respondent engaged in similar activities worked less than two hundred days a year; eight hours constituted a normal working day. Claimant was paid compensation for temporary total disability from September 27, 1940, to April 26, 1941, in the sum

of $476.29. At the time of the accident he had three children
under sixteen years of age dependent upon him for support.
The respondent has paid for services rendered claimant in
connection with the injury:

Dr. John L. Grout, Berwyn...................................... $125.00
Dr. Albert W. Hall, Berwyn........................................ 5.00
Dr. William R. Cubbins, Chicago................................... 50.00
Dr. H. B. Thomas, Chicago........................................ 286.67
Dr. E. Lee Strohl, Chicago........................................ 61.00
Dr. E. W. Hagens, Chicago......................................... 10.00
Dr. Abraham Ettleson, Chicago..................................... 10.00
Berwyn Community Hospital, Berwyn................................ 144.25
St. Luke's Hospital, Chicago..................................... 122.75
R. V. Fogarty, R. N., Maywood.................................... 56.00
Frank Anderson, R. N., Chicago................................... 56.00
Abram and Sons, Berwyn........................................... 10.00
Chas. J. Veselsky, claimant...................................... 5.60

or a total of $942.27. Claim is made for a further period of
temporary total disability from April 26, 1941, to September
1, 1941, when claimant was employed by the town of Cicero
as a street sweeper. The only evidence in the record in sup-
port of this contention is claimant's testimony that he was
unable to work until September. Dr. Thomas, on the other
hand, after a thorough examination, reported claimant was
fully recovered from the effects of the injury on April 22nd.
The record does not justify any further award for temporary
total disability.

Claimant also seeks an award for permanent partial dis-
ability of fifteen per cent loss of use of the right leg. He
testified that his right hip and leg were injured in the acci-
dent, and that he bumped the top and back of his head; that
while he was in St. Luke's Hospital the doctors did nothing
but come to see him and put an electric lamp on his leg; that
his leg continued to trouble him, and his head hurt; that an
x-ray was taken of his head. He also testified that he is now
able to sweep only one block each day; that he cannot work
steadily, and from time to time is required to sit down and
rest. When questioned as to his present condition, claimant
stated that it bothered him to sit too long; that his whole body
pains him including his right leg in the region of the hip; that
his head gets dizzy; that he gets tired and can't talk; that he
gets dizzy three or four times a day while he is working; and
"in the night after supper I got something in the heart, heavy
eat." He also stated that prior to the accident he had no

pains in his head or any other place in his body; that prior to the accident his physical condition was unimpaired.

Dr. Frank E. Deadman, called as a witness for the claimant, testified that he examined claimant twice, on April 26, 1941, and on February 11, 1942. His first examination disclosed several healed scars on claimant's right leg, some swelling and enlargement of the right knee, and a point of tenderness above the crest of the right ilium. He found nothing abnormal about the lungs or heart, no marks about the head, no healed lacerations or abrasions. The patient complained of some dizziness. At the time of the second examination, Dr. Deadman found nothing wrong with claimant's chest except an abnormal amount of air in the pleural cavities; found his blood pressure to be approximately normal; found no organic lesions about the heart, and no arteriosclerosis. Claimant, however, still had an enlargement of the right knee, the right thigh was atrophied, and the muscles flabby. The doctor testified, ''That shows that he has not been using them like anybody would in the normal manner.'' The movements in the knee and thigh could be made to reach the normal limit, and the only complaint the patient made was when the right thigh was fully flexed on the abdomen. Dr. Deadman testified that claimant had some functional impairment of the right leg, probably not more than fifteen per cent; that in his opinion the dizziness was the result of a concussion of the brain following the accident of September 26, 1940; that based upon a reasonable medical certainty, claimant's condition of ill being, headaches, and dizziness could be the result of the accident on September 26, 1940; that there was no evidence of a generalized disease.

The respondent called no witnesses, but submitted its case upon the report of the Division of Highways containing portions of reports of Dr. Thomas. These disclose that as a result of the accident, claimant had been scratched in many parts of the body, most extensively on his face; that he had been quite black and blue over the right flank and thigh region; that there had been much swelling; that an x-ray had shown a fracture of the right ilium. The lacerations and the fractured ilium, however, had healed well. On April 22, 1941, when Dr. Thomas dismissed the case, he reported that claimant had a long standing pulmonary emphysema with secondary cardiac changes, chronic myocarditis; that the occasional

mental symptoms were secondary to the cardio-pulmonary disease; and that the condition was in no way related to the accident. On April 29, 1941, Dr. Thomas made another examination of claimant and still felt that claimant's condition was "part of a generalized disease rather than any local process such as a head injury. His (claimant's) many complaints speak against any localized condition such as one due to the concussion. There are many things that could be done for the patient's medical needs which are not service-connected, such as care of his teeth, his gastro-intestinal tract and cardiac condition."

From the medical testimony, it appears that claimant has sustained a fifteen per cent permanent partial loss of the use of his right leg. At the rate of fifty cents per hour, eight hours per day, compensation should be determined upon the basis of two hundred days at $4.00 per day, or an annual wage of $800.00. This in turn equals an average weekly wage of $15.38. Claimant having three children under the age of sixteen years at the time of the accident, he is entitled to an award of $13.00 per week for fifteen per cent of 190 weeks, or $13.00 per week for 28½ weeks, being the sum of $370.50. Since the accident occurred after July 1, 1939, the amount of compensation must be increased ten per cent, making a total sum of $407.55. Claimant, however, was paid $476.29 for temporary total disability for a period of thirty weeks, which was $47.29 in excess of the amount he was entitled to receive under the provisions of the Workmen's Compensation Act. This must be deducted from the present award.

Claimant also suggests that in the event he is unable to continue his present employment, he is entitled to an award for total disability in the sum of $4,400.00 and pension for life. The medical testimony in this regard is highly contradictory, and claimant's own testimony very unsatisfactory. The court is of the opinion that the record does not warrant such a finding.

An award is therefore made to the claimant in the sum of $360.26, all of which is accrued and is payable forthwith.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30th, 1941, and being by the terms of such Act, subject to the approval of the

Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.